# United States Court of Appeals
## For the First Circuit

No. 04-1773

ANTONIO VÉLEZ-DÍAZ; SANTA GARCÍA-HERNÁNDEZ;
CONJUGAL PARTNERSHIP VÉLEZ-GARCÍA; YAHAIRA FAJARDO-CORREA;
ANTONECHA VÉLEZ-FAJARDO, a minor,

Plaintiffs, Appellees,

v.

AMADO VEGA-IRIZARRY; MIGUEL A. MARRERO; JANE ERICKSON;
VÍCTOR M. LÓPEZ; TEODORO LEBRÓN, ET AL.,

Defendants, Appellants,

UNITED STATES OF AMERICA,

Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO
[Hon. José Antonio Fusté, U.S. District Judge]

Before
Torruella, Selya, and Lynch,
Circuit Judges.

Anthony A. Yang, with whom Barbara L. Herwig, Attorneys,
Appellate Staff, Civil Division, Peter D. Keisler, Assistant
Attorney General, and H.S. García, United States Attorney, were on
brief, for appellant.
Frank D. Inserni-Milam, with whom Luis R. Mellado-González,
was on brief, for appellees.

September 2, 2005

**TORRUELLA**, <u>Circuit Judge</u>. This case concerns the tragic death of Antonio Vélez-García ("Vélez"), an undercover Federal Bureau of Investigation ("FBI") cooperating witness, who was murdered by a gang member while assisting the FBI in a criminal investigation into Puerto Rico gang-related drug trafficking involving the use of firearms.

Vélez's parents, Antonio Vélez-Díaz and Santa García-Hernández, his widow, Yahaira Fajardo-Correa, and his minor daughter, Antonecha Vélez-Fajardo ("Vélez's relatives"), brought an action for money damages in the United States District Court for the District of Puerto Rico against the individual law enforcement agents with whom Vélez was cooperating at the time of his death -- FBI agents Amado Vega-Irizarry, Miguel A. Marrero, and Jane Erickson, and Puerto Rico police officers Víctor M. López and Teodoro Lebrón -- in their individual capacities. Vélez's relatives seek over ten million dollars in damages based on two principal claims for monetary relief: (1) a claim pursuant to <u>Bivens</u> v. <u>Six Unknown Federal Narcotics Agents</u>, 403 U.S. 388 (1971), alleging a violation of the Fifth Amendment; and (2) a negligence claim arising under the Puerto Rico Constitution and Puerto Rico statutory law.

The United States and the individual defendants now bring the present interlocutory appeal challenging the district court's opinion and order, which denied a motion to substitute the United

States as defendant for the state law claim pursuant to the Westfall Act, 28 U.S.C. § 2679, and to dismiss the Bivens claim.

## I.

### A. Factual Background

On or about January 16, 2003, federal agents arrested Vélez for possession of controlled substances and informed him that he might serve a long prison sentence for his criminal activity. Vélez told the agents that he did not want to go to prison, and the agents asked Vélez if he was interested in cooperating with them. Vélez later accepted the offer to cooperate and worked with the FBI as a cooperating witness for nearly two months until he was killed in the early morning of March 5, 2003.

On the evening of March 4, 2003, Vélez was working with the defendant agents to set up large-scale transactions of controlled substances and/or firearms in Guaynabo, Puerto Rico. The agents installed a video camera in the van Vélez used for the transaction and attached a recording device to Vélez's body. Vélez remained in constant communication with the agents via the recording device. After about four hours of contact with the gang members, including David Gómez-Olmeda, Vélez repeatedly stated through the body-recording device that he was tired and wanted to leave. Shortly thereafter, Gómez, without warning, shot Vélez approximately eight times at close range and killed him.

In their complaint, plaintiffs aver that Vélez's murder was the direct result of the failure of the defendant agents to follow unspecified FBI and Puerto Rico police regulations, policies and directives in the handling of informants and witnesses cooperating with the government. In particular, plaintiffs contend that the agents were reckless in failing to protect Vélez, "because they left [Vélez], by himself, far away from themselves." Compl. ¶ 21. Plaintiffs thus claimed damages pursuant to the Fifth Amendment of the United States Constitution as well as Article II, Sections 8 and 10 of the Constitution of the Commonwealth of Puerto Rico and the Puerto Rico statutory law of negligence, P.R. Laws Ann. Tit. 31, § 5141.[1]

## B. Procedural History

The individual defendants and the United States moved to dismiss both the state law and federal constitutional claims. With respect to the claims arising under Puerto Rico statutory and constitutional law, the United States moved to substitute itself for the individual defendants pursuant to Section 6 of the Westfall Act, 28 U.S.C. § 2679(d), by certifying that the defendants were acting within the scope of their federal employment. At the same

---

[1] Plaintiffs also made a claim against Puerto Rico police officers López and Lebrón pursuant to 42 U.S.C. § 1983, but that claim was dismissed by the district court on the ground that these defendants were acting under color of federal law, rather than state law, as federally deputized agents. That ruling is not at issue in this interlocutory appeal.

time, the individual defendants moved to dismiss the federal constitutional claim on the grounds that plaintiffs' complaint did not state a constitutional violation and, alternatively, that the officers were entitled to qualified immunity. Plaintiffs did not oppose the motion to dismiss. On March 25, 2004, the district court issued an opinion and order denying the motion for substitution and dismissal.

The issues before us in this interlocutory appeal are (1) whether the district court erred by not substituting the United States as the defendant for plaintiffs' damages claim based on Puerto Rico law, and (2) whether the district court erred in denying the individual agents qualified immunity from this Bivens claim; this encompasses, as the first part of the immunity test, whether a constitutional claim has been stated at all.

**II.**

**A. Westfall Act Substitution**

In the case below, the United States certified that the individual defendants were acting within the scope of their federal employment and moved to substitute itself for the individual defendants pursuant to Section 6 of the Westfall Act, 28 U.S.C. § 2679(d).

"Under the Westfall Act, the Attorney General can certify that a federal employee named as a defendant in a civil case was 'acting within the scope of his office or employment at the time of

-5-

the incident' that serves as the basis for a tort claim against that employee." Lyons v. Brown, 158 F.3d 605, 606 (1st Cir. 1998) (quoting 28 U.S.C. § 2679(d)(1)).  The Act provides that "[u]pon certification . . . any civil action or proceeding commenced upon such claim in a United States district court shall be deemed an action against the United States . . . and the United States shall be substituted as the party defendant."  28 U.S.C. § 2679(d)(1). While certification is sufficient to substitute the United States as defendant and dismiss the federal employees from the case, the certification is "provisional and subject to judicial review." Davric Me. Corp. v. United States Postal Serv., 238 F.3d 58, 65 (1st Cir. 2001) (citing Gutiérrez de Martínez v. Lamagno, 515 U.S. 417, 434 (1995)).  Where plaintiffs are able to show that the employees acted outside the scope of their employment, the employees may be re-substituted as the party defendants.  Davric, 238 F.3d at 65; Aversa v. United States, 99 F.3d 1200, 1208 (1st Cir. 1996).

### 1.  Jurisdiction

At the threshold, plaintiffs-appellees argue that the United States does not have standing to appeal the district court's denial because the United States is not a party to the suit and has not attempted to intervene.  We disagree.  In addition to recognizing "an exception to the only a party may appeal rule that allows a nonparty to appeal the denial of a motion to intervene,"

-6-

<u>Microsystems Software, Inc.</u> v. <u>Scandinavia Online AB</u>, 226 F.3d 35, 40 (1st Cir. 2000) (internal quotation marks omitted), this court and others have entertained the United States' right to appeal immediately from orders denying Westfall Act substitution. <u>See</u>, <u>e.g.</u>, <u>Lyons</u>, 158 F.3d at 606-07 (allowing interlocutory appeal of district court order denying Westfall Act substitution brought by both the United States and the individual defendant); <u>Taboas</u> v. <u>Mlynczak</u>, 149 F.3d 576, 579 (7th Cir. 1998) (treating Westfall Act immunity in the same fashion as qualified immunity in federal civil rights actions, denials of which are customarily subject to immediate interlocutory appeal).

Plaintiffs also argue that the district court's order denying substitution is not yet ripe for appeal because the government's certification is not conclusive and plaintiffs require discovery to challenge the certification.

While we agree that the government's certification is subject to judicial review such that the individual agents might be later re-instated as defendants in this case, <u>see</u> <u>Davric</u>, 238 F.3d at 65; <u>Aversa</u>, 99 F.3d at 1208, this does not alter the fact that the initial step "[u]pon certification" is that "any civil action or proceeding commenced . . . in . . . district court <u>shall</u> be deemed an action against the United States . . . and the United States <u>shall</u> be substituted as the party defendant."  28 U.S.C. § 2679(d)(1).

Plaintiffs contend that the word "shall" in 28 U.S.C. § 2679(d)(1), is not mandatory, citing Gutiérrez de Martínez, 515 U.S. at 432 n.9, which indicates in a footnote that the term "shall" is sometimes used to mean "may." This reference by the Supreme Court, however, merely explains that the certification does not "conclusively establish as correct the substitution of the United States as defendant in place of the employee." Id. at 434. In Gutiérrez de Martínez, the Supreme Court, in a divided decision, determined that the Attorney General's certification is not conclusive and that district courts may review the certification of scope of employment in light of plaintiffs' objections. This is not irreconcilable with the process that has been established by the courts -- that the United States is initially substituted upon certification, and the defendants may be re-substituted later if the court determines that they were not acting within the scope of their federal employment.

Plaintiffs' stated intent to challenge the filing and service of a certification in the appropriate form, and their need for discovery to mount this challenge are irrelevant to this interlocutory appeal. The United States and individual defendants challenge the substance of the district court's denial of the initial substitution of the United States upon certification, as provided for in § 2679(d)(1). The possibility that the district court may later determine that a federal employee was acting

-8-

outside the scope of his or her employment, contrary to the government's certification and should be "re-substituted," has no bearing on the fact that the district court should have initially substituted the United States as defendant "[u]pon certification." Id.

For these reasons, we find that the United States has standing to appeal the denial of Westfall Act substitution along with the individual defendants.

**2. Merits**

The district court denied the motion to substitute the United States on the basis of its conclusion that an exception to substitution applied in this case because the plaintiffs asserted a Bivens cause of action under the federal Constitution, in addition to the state law claims. We find that the fact that this case raises both state law and federal constitutional claims does not render inapplicable the Westfall Act's requirement for the substitution of the United States for the defendants with respect to the state law claims.

Section 5 of the Westfall Act, 28 U.S.C. § 2679(b), provides that the remedy against the United States under the Federal Tort Claims Act (FTCA) for "personal injury or death arising or resulting from the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment is exclusive of any other civil action or

proceeding for money damages by reason of the same subject matter" and shall "preclude[]" any other damages action "arising out of or relating to the same subject matter." 28 U.S.C. § 2679(b)(1) (emphases added). The second paragraph of Section 5 then provides two exceptions to the exclusiveness of the remedy and preclusion of other damage suits, including that "[p]aragraph (1) does not extend or apply to a civil action against an employee of the Government . . . which is brought for a violation of the Constitution of the United States." Id. at § 2679(b)(2).

This exception for federal constitutional violations, however, applies only to paragraph (1) of Section 5, id. § 2679 (b)(1), and not to the provision for substitution of the United States "[u]pon certification by the Attorney General," which appears in § 2679(d). Indeed, courts routinely order Westfall Act substitution of the United States as the defendant for state law claims when both state law and federal constitutional damage claims are asserted against federal employees. See, e.g., Davric, 238 F.3d at 65 (affirming Westfall Act substitution only as to state law claims where plaintiff also asserted Bivens claims against federal employee); Aversa, 99 F.3d at 1206 (same).

Thus, we find that the district court's failure to make a partial substitution of the United States as party defendant as to the state law claims was error.[2]

## B. **Bivens claim**

The individual agents contend that the district court should have dismissed plaintiffs' federal Bivens claim against the agents because the individual agents are entitled to qualified immunity. See Fed. R. Civ. P. 12(b)(6). We review the denial of a motion to dismiss de novo, assuming plaintiffs' allegations are true and making all reasonable inferences in favor of the plaintiffs. See Garrett v. Tandy Corp., 295 F.3d 94, 97 (1st Cir. 2002).

### 1. **Jurisdiction**

Before reaching the merits, however, we must consider the threshold issue of jurisdiction. This court would not normally have interlocutory jurisdiction over the district court's denial of the motion to dismiss for failure to state a constitutional violation because it is not a "final decision" in the sense required by 28 U.S.C. § 1291 (conferring appellate jurisdiction over "final decisions" of the district courts). This issue,

---

[2] While the United States argued below that the FTCA claim against it should be dismissed once the government is substituted as the defendant party, that issue is not before this court. Our jurisdiction over this interlocutory appeal extends only to the collateral order denying the United States' request for party status through substitution.

however, is the first question courts must answer when considering a claim qualified immunity. We will, therefore, address this issue in our qualified immunity analysis.

Appellate courts have jurisdiction over interlocutory appeals from denials of qualified immunity where "the denial rests on purely legal questions and not on disputed issues of fact." Riverdale Mills Corp. v. Pimpare, 392 F.3d 55, 60 (1st Cir. 2004). "The Supreme Court has held that the denial of a dispositive motion bottomed on qualified immunity cannot support an interlocutory appeal if the controlling question is 'whether or not the pretrial record sets forth a genuine issue of fact for trial.'" Camilo-Robles v. Zapata, 175 F.3d 41, 45 (1st Cir. 1999) (quoting Johnson v. Jones, 515 U.S. 304, 319-20 (1995)). However, where the "operative question is purely legal in nature," the denial of a proffered qualified immunity defense remains immediately appealable as a collateral order. Camilo-Robles v. Hoyos, 151 F.3d 1, 8 (1st Cir. 1998) (citing Johnson, 515 U.S. at 319); accord Stella v. Kelley, 63 F.3d 71, 74 (1st Cir. 1995).

Plaintiffs contend that the individual defendants do not have standing to appeal the district court's denial of defendants' motion to dismiss because the district court found that material questions of fact remain on the issue of whether the defendants should be granted qualified immunity. The district court determined that there is a disputed factual issue as to whether

-12-

defendants' actions were sufficiently reckless to rise to the level of a constitutional violation and thus declined to grant qualified immunity without further fact-finding.

Defendants appeal the district court's rejection of their argument that, as a matter of law, the facts alleged by the plaintiffs cannot amount to a violation of substantive due process under clearly established law. In other words, defendants-appellants frame the issue of whether plaintiffs have stated a claim upon which relief may be granted as a purely legal rather than factual issue. We therefore find that appellate jurisdiction exists over the qualified immunity issue.

### 2. Merits

The justification for the qualified immunity doctrine is that "public officials performing discretionary functions should be free to act without fear of retributive suits for damages except when they should have understood that particular conduct was unlawful." Limone v. Condon, 372 F.3d 39, 44 (1st Cir. 2004). Thus, the Supreme Court has held that qualified immunity "is an immunity from suit rather than a mere defense to liability" and "it is effectively lost if a case is erroneously permitted to go to trial." Mitchell v. Forsyth, 472 U.S. 511, 526 (1985).

Determining whether officials are entitled to qualified immunity involves a three-part test. See Rivera-Jiménez v. Pierluisi, 362 F.3d 87, 93 (1st Cir. 2004). First, we must ask:

"'Taken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right?'" Riverdale Mills Corp. v. Pimpare, 392 F.3d 55, 61 (1st Cir. 2004) (quoting Saucier v. Katz, 533 U.S. 194, 201 (2001)). Second, we ask "'whether the right was clearly established at the time of the alleged violation' such that a reasonable officer would 'be on notice that [his] conduct [was] unlawful.'" Id. (quoting Suboh v. Dist. Attorney's Office, 298 F.3d 81, 90 (1st Cir. 2002)) (brackets in original). Finally, we must determine "whether a 'reasonable officer, similarly situated, would understand that the challenged conduct violated' the clearly established right at issue." Id. (quoting Suboh, 298 F.3d at 90).

Defendants' qualified immunity defense was brought pursuant to Federal Rule of Civil Procedure 12(b)(6) in a motion for failure to state a claim upon which relief may be granted. The qualified immunity analysis must, therefore, be based solely on the facts stated in plaintiffs' complaint. Riverdale Mills, 392 F.3d at 61.

At the threshold, we consider whether the allegations, taken in the light most favorable to the plaintiffs, could support a conclusion that the individual agents violated Vélez's constitutional rights. At this stage of the inquiry, "courts must not define the relevant constitutional right in overly general terms, lest they strip the qualified immunity defense of all

-14-

meaning." Butera v. District of Columbia, 235 F.3d 637, 646-50 (D.C. Cir. 2001) (citing Anderson v. Creighton, 483 U.S. 635, 639 (1987)).

Plaintiffs alleged that Vélez's murder was a direct result of defendants' failure to follow unspecified FBI and local police regulations concerning the handling of informants and witnesses cooperating with the government. Thus, plaintiffs asserted a Bivens claim alleging a violation of Fifth Amendment substantive due process. Defendants countered that there can be no Due Process violation when the government fails to protect an individual from private violence and, therefore, the Bivens claim should be dismissed. The district court acknowledged that "negligent or even wilfully reckless state action will not create a constitutional violation when the government was only causally connected to the harm." Vélez-Díaz v. Vega-Irizarry, No. 04-1773, slip op. at 10 (D.P.R. Mar 25, 2004) (citing Monahan v. Dorchester Counseling Ctr., Inc., 961 F.2d 987, 993 (1st Cir. 1992)). Nevertheless, the district court concluded that plaintiffs sufficiently pled a violation of substantive due process based on the court's view that the agents failed to protect Vélez after their actions and omissions rendered him "more vulnerable to peril." Id.

The Due Process Clause applies only to governmental deprivations of life, liberty, or property and thus provides no

-15-

guarantee of government protection from harms caused by private parties. See U.S. Const. amend. V. ("No person shall . . . be deprived of life, liberty, or property, without due process of law."). This court has held that to establish a substantive due process claim plaintiffs must first establish a deprivation of a "protected interest" in life, liberty, or property. Rivera v. Rhode Island, 402 F.3d 27, 33-34 (1st Cir. 2005); accord Washington v. Glucksberg, 521 U.S. 702, 722 (1997) (finding identification of a fundamental right is a "threshold requirement" in establishing a due process violation). In this case, Vélez's relatives allege that Vélez was deprived of his life as a result of the agents' inaction, and Vélez's life is a protected interest.

Plaintiffs must also show that the deprivation of the protected right was caused by government conduct. It is well-settled that the due process provision of the Fifth Amendment serves as a limitation only on governmental, not private, action. See Gerena v. P. R. Legal Servs., Inc., 697 F.2d 447, 449 (1st Cir. 1983) (citing Pub. Utils. Comm'n v. Pollak, 343 U.S. 451, 461 (1952)). When a government official himself inflicts harm upon an individual or his property, that action can constitute a deprivation of a protected interest if the official's conduct shocks the conscience. See Martínez v. Colón, 54 F.3d 980, 986 (1st Cir. 1995) ("To be sure, violence is attributable to state action if the perpretrator is acting under color of state law.");

cf. Cummings v. McIntire, 271 F.3d 341, 344-47 (1st Cir. 2001) (unnecessary and hard shove with abusive language by officer not conscience-shocking absent intent to harm). In this case, however, the person who shot Vélez was clearly a private actor.

Nevertheless, in scenarios in which government officials actively direct or assist private actors in causing harm to an individual, some courts have treated the government's involvement as amounting to government conduct. For example, "if the police had handed [Gómez] the gun with instruction to shoot [Vélez], cf. Hemphill v. Schott, 141 F.3d 412, 418-19 (2d Cir. 1998), or assured [Gómez] that he could attack [Vélez] with impunity, cf. Dwares v. City of New York, 985 F.2d 94, 96-97 (2d Cir. 1993)," these actions may constitute government conduct. Rivera, 402 F.3d at 34. In such scenarios, the government officials and the private actor are essentially "joint tortfeasors, and therefore, may incur shared constitutional responsibility." Martínez v. Colón, 54 F.3d 980, 985 n.4 (1st Cir. 1995). However, there is no claim of such joint enterprise here. In this case, plaintiffs claim that the government involvement was a creation of risk and then a failure to protect against that risk.

Outside contexts in which the action of government officials (or their joint tortfeasors) injure citizens, this court has been careful to limit substantive due process to the parameters articulated by the Supreme Court in DeShaney v. Winnebago County

-17-

Department of Social Services, 489 U.S. 189, 197 (1989). There, the Supreme Court stated that "[a]s a general matter . . . a State's failure to protect an individual against private violence simply does not constitute a violation of the Due Process Clause." Id. at 197.

The DeShaney Court also recognized a limited exception to this rule which applies to circumstances in which the government has a "special relationship" with the individual because government action has deprived that individual of the liberty needed to protect himself. Id. at 200. In such situations a constitutional duty to protect may arise. "The affirmative duty to protect arises not from the State's knowledge of the individual's predicament or from its expressions of intent to help him, but from the limitation which it has imposed on his freedom to act on his own behalf." Id. "This court has recognized that this [special] relationship, and thus a constitutional duty, may exist when the individual is incarcerated or is involuntarily committed to the custody of the state." Rivera, 402 F.3d at 34 (citing Monahan, 961 F.2d at 991-92).

Plaintiffs in this case, however, have not identified a custodial relationship between Vélez and the agents that constitutes a "special relationship" creating an affirmative constitutional duty to protect. Vélez was not in custody or involuntarily committed while he was acting as an informant for the

-18-

federal agents, but rather was free to decline to cooperate further with the agents at any point.

In addition to the special "custodial" relationships, the DeShaney Court suggested, but never expressly recognized, the possibility that liability might arise where the state creates or substantially contributes to the creation of a danger. Specifically, the Supreme Court stated that "[w]hile the State may have been aware of the dangers . . . it played no part in their creation, nor did it do anything to render him more vulnerable to them." DeShaney, 489 U.S. at 201 (emphasis added).

Most of the circuit courts have now acknowledged that the existence of a constitutional violation is possible, on particular facts, under a "state-created danger" theory of liability. See Butera, 235 F.3d at 648-51 (joining other circuits "in holding that, under the State endangerment concept, an individual can assert a substantive due process right to protection by [state] from third-party violence when [state] officials affirmatively act to increase or create the danger that ultimately results in the individual's harm"). See, e.g., Kallstrom v. City of Columbus, 136 F.3d 1055, 1066-67 (6th Cir. 1998) (holding that the City of Columbus's release of information from undercover officers' files to defense counsel, which substantially increased the vulnerability of the officers to private acts of vengeance, created a constitutionally cognizable state-created danger); Wood v.

Ostrander, 879 F.2d 583, 589-90 (9th Cir. 1989) (holding that plaintiff raised a genuine factual dispute whether state trooper deprived her of a constitutional liberty interest by abandoning her, after impounding her vehicle, at night in a high-crime area, resulting in her rape by a stranger from whom she accepted a ride).

The Fifth Circuit, however, has flatly rejected the "state-created danger" theory of liability. See Beltrán v. City of El Paso, 367 F.3d 299, 307 (5th Cir. 2004).

"This court has, to date, discussed the state created danger theory, but never found it actionable on the facts alleged." Rivera, 402 F.3d at 35 (collecting cases).[3]

In determining whether Vélez's relatives have alleged a substantive due process violation, we keep in mind that "in a state creation of risk situation, where the ultimate harm is caused by a third party, 'courts must be careful to distinguish between conventional torts and constitutional violations, as well as

---

[3]  This court recently noted that

> [i]t is not clear from the "creation of danger" language in DeShaney whether a state action which enhances or creates danger to an individual would provide a separate exception to the general rule of no duty to protect, or whether the language is simply in service of the special relationship exception and provides a set of circumstances where the state's actions might create a "special relationship" and thus a duty to protect.

Rivera, 402 F.3d at 35 n.5.

-20-

between state inaction and action." Id. at 36 (quoting Soto v. Flores, 103 F.3d 1056, 1064 (1st Cir. 1997)).

We hold that plaintiffs have not alleged facts to support a claim based on the state created danger theory. Plaintiffs' theory may be that the government owes a duty to all cooperating witnesses to protect them from harm. There are risks inherent in being a cooperating witness, but the state does not create those dangers, others do, and the witness voluntarily assumes those risks. See Summar v. Bennett, 157 F.3d 1054, 1059 & n.2 (6th Cir. 1998).

We leave open the question whether, nonetheless, the state may violate substantive due process as to cooperating witnesses if it takes certain actions, such as sending a cooperating witness to what the state knows would be his certain death. Such action may shock the conscience by demonstrating "deliberate indifference." See Butera, 235 F.3d at 652. This case does not come close. There is no allegation the government knew Vélez would be murdered. At most, the allegation is that Vélez said that he was tired, not that he said he was under imminent risk. The attempt to show a substantive due process violation based on a claim that some yet unknown regulation required the state to promptly remove "tired" cooperating witnesses fails.

Plaintiffs have therefore failed to carry their burden under the threshold inquiry for qualified immunity. Absent a

showing that the agents' conduct violated a constitutional right, qualified immunity applies.

### III.

For the reasons stated, the order of the district court is reversed and the case is remanded for further proceedings consistent with this opinion.

**<u>Reversed and Remanded</u>**.