# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

October 4, 2010

No. 09-41072

Lyle W. Cayce
Clerk

IDELMA ANA SAENZ; YOLANDA RAMIREZ; GLORIA SAENZ, Individually
and as Next Friend of Diana Figueroa; DIANA FIGUEROA; JESUS HENRY
SAENZ; JESUS SAENZ, Individually and as Administrator of the Estates of
Dominga Saenz and Nelson Saenz,

Plaintiffs - Appellants

v.

CITY OF MCALLEN; ARMANDO HERNANDEZ; HUMBERTO RESENDEZ;
ORLANDO OLIVAREZ; YASSAR HASSAN,

Defendants - Appellees

Appeal from the United States District Court
for the Southern District of Texas

Before JOLLY, DeMOSS, and DENNIS, Circuit Judges.

PER CURIAM:[*]

Appellants filed suit against the City of McAllen (the City) and the
individual defendants (collectively "Appellees") for violations of 42 U.S.C. § 1983
and Texas state law, arising from the deaths of Dominga Saenz and Nelson
Saenz. The magistrate judge granted the Appellees' motions for summary
judgment on the § 1983 claims and motion to dismiss the state law claims.

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not
be published and is not precedent except under the limited circumstances set forth in 5TH CIR.
R. 47.5.4.

No. 09-41072

Appellants filed this appeal. Because Appellants' theory of liability supporting their §1983 claims against the individual police officers is not clearly established in this circuit, we affirm the magistrate judge's grant of summary judgment on the basis of qualified immunity. We also affirm the magistrate judge's grant of summary judgment on Appellants' municipal liability claims against the City and its dismissal of Appellants' state law claims.

## I.

Nelson Saenz, Dominga's son, had a history of serious mental illness and had murdered his wife years ago.[1] In the days leading up to the events in question, Nelson's mental health had deteriorated. He had allegedly stopped taking his medication, acquired a gun, and threatened to kidnap certain members of his family. On September 3, 2005, Investigator Armando Hernandez, a 15-year veteran of the City's police department, and his wife, Linda Hernandez, went to Nelson's apartment for the purpose of having him committed.[2] Linda was Dominga's niece. Armando and Linda knew of Nelson's mental illness, history of violence, and deteriorating mental condition. Armando attempted to get Nelson to come outside but Nelson refused and barricaded himself in his apartment, telling Armando to "come back next week." Armando called for backup and McAllen police officers Olivarez Hassan, Humberto

---

[1] Because this case involves an appeal from a grant of summary judgment, we adopt the Appellants' version of the facts to the extent supported by the evidence. *See Stewart v. Miss. Transp. Comm'n,* 586 F.3d 321, 327 (5th Cir. 2009).

[2] There is some discrepancy over the circumstances under which the police were summoned to Nelson's apartment. In their opening brief, Appellants assert that Armando was "requested by the family of Nelson Saenz to commit Nelson to a mental health facility," citing to Armando's deposition testimony, because "they knew [Armando] ha[d] been [a] police officer with the City of McAllen for many years and because . . . Linda [ ] was a relation to the family with some knowledge of Nelson's previous mental illness violence, including killing his wife with an axe." However, in the Appellants' Original and Amended Complaints, Appellants alleged that they had contacted the police department directly and had no prior notice that the Hernandezes were going to Nelson's apartment.

No. 09-41072

Resendez, and Yassar Hassan eventually arrived. Armando then developed a "plan of approach" to extract Nelson from his apartment. Dominga would knock on Nelson's front door in an attempt to coax her son to come out of his apartment while the police officers would remain in front of the house but out of Nelson's line of sight.

Armando summoned Dominga to Nelson's apartment. She arrived with her daughters Yolanda Ramirez and Idelma Saenz. Armando removed Dominga from the vehicle and pulled her to Nelson's front door, staying behind her while the other officers got in the "ready position." Yolanda, realizing that Dominga was being taken to Nelson's door in order to extract him, yelled for the police to move Dominga away from the entrance because Nelson had a gun. Nelson began yelling profanities at the police officers. Dominga attempted to get Nelson to come out of his apartment, but after no response she knelt down to pray. When Dominga started to stand, Nelson opened his door and started shooting. The police officers returned fire. Both Nelson and Dominga were killed in the exchange. Dominga was shot eleven times. Nelson's gun held only nine rounds. Appellants submitted expert testimony evidencing that Dominga was shot at least four times by the officers' weapons.

Appellants filed suit in the United States District Court for the Southern District of Texas against the individual police officers pursuant to 42 U.S.C. § 1983 under the "state created danger theory," alleging that the police officers knowingly created a dangerous environment that would not have existed but for the officers' actions. Appellants also filed claims against the City pursuant to 42 U.S.C. § 1983, alleging that the City promoted a "shoot first, ask questions later" policy within its police department, and filed Texas state law claims against all Appellees for bystander recovery and violations of the Texas Torts Claims Act. The parties consented to proceed before a magistrate judge. *See* 28 U.S.C. § 636(c) (2009); FED. R. CIV. P. 73(a).

3

No. 09-41072

The City filed a motion to dismiss, *inter alia*, Appellants' state law claims, which was granted.[3] Appellees filed separate motions for summary judgment on the various § 1983 claims, both of which were granted. Appellants timely appealed.

## II.

This court reviews the grant of summary judgment based on qualified immunity de novo, applying the same standard as the magistrate judge. *See Mongrue v. Monsanto Co.*, 249 F.3d 422, 428 (5th Cir. 2001); FED. R. CIV. P. 56.

Section 1983 provides a cause of action for individuals who have been "depriv[ed] of any rights, privileges, or immunities secured by the Constitution and laws" of the United States by a person or entity acting under color of state law. 42 U.S.C. § 1983 (2003). The doctrine of qualified immunity protects government officials from liability for civil damages insofar as their conduct (1) does not violate a constitutional right and (2) was not objectively unreasonable in light of clearly established law at the time of the violation. *Pearson v. Callahan*, 129 S. Ct. 808, 815-16 (2009). This court may address either prong first. *Id.* at 818 (*overruling in part Saucier v. Katz*, 533 U.S. 194 (2001)).

## A.

When determining whether a constitutional right was clearly established, this court asks whether the right was clearly established at the time of the conduct, which for this matter is 2005. *See Lytle v. Bexar Cnty., Tex.*, 560 F.3d 404, 417 (5th Cir. 2009). A right is clearly established when "the contours of the right [are] sufficiently clear [such] that a reasonable official would understand that what he is doing violates that right." *Wernecke v. Garcia*, 591 F.3d 386, 392 (5th Cir. 2009) (quotations and citation omitted). Our inquiry focuses on whether the officials were on notice that their conduct violates clearly established law

---

[3] The magistrate judge also dismissed Appellees' state law claims against the individual defendants which has not been appealed.

and that the state of the law provided fair warning that their conduct was unconstitutional. *See Hope v. Pelzer*, 536 U.S. 730, 740-41 (2002). "[A] defendant's acts are held to be objectively reasonable unless *all* reasonable officials in the defendant's circumstances would have then known that the defendant's conduct violated the United States Constitution or the federal statute as alleged by the plaintiff." *Thompson v. Upshur Cnty., Tex.*, 245 F.3d 447, 457 (5th Cir. 2001) (emphasis in original).

Appellants allege a "state created danger theory" as the basis of liability for their § 1983 claims against the individual defendants. Generally, "a state official has no constitutional duty to protect an individual from private violence." *McClendon v. City of Columbia*, 305 F.3d 314, 324 (5th Cir. 2002) (en banc) (per curiam) (citing *DeShaney v. Winnebago Cnty. Dep't of Soc. Servs.*, 489 U.S. 189, 197 (1989)). However, the Supreme Court has held that where the state, "through the affirmative exercise of its powers, acts to restrain an individual's freedom . . . 'through incarceration, institutionalization, or other similar restraint of personal liberty,' the state creates a 'special relationship' between the individual and the state which imposes upon the state a constitutional duty to protect that individual from dangers, including, in certain circumstances, private violence." *Id.* (quoting *DeShaney*, 489 U.S. at 200). Some circuit courts have read *DeShaney* to imply a second exception, the state created danger theory, to the general rule against state liability for private violence.[4] In this

---

[4] *See, e.g., Okin v. Village of Cornwall-On-Hudson Police Dep't*, 577 F.3d 415, 434-35 (2d Cir. 2009); *Waddell v. Hendry Cnty. Sheriff's Office*, 329 F.3d 1300, 1306-07 (11th Cir. 2003); *Ruiz v. McDonnell*, 299 F.3d 1173, 1182-84 (10th Cir. 2002); *Kallstrom v. City of Columbus*, 136 F.3d 1055, 1066-67 (6th Cir. 1998); *Kneipp v. Tedder*, 95 F.3d 1199, 1201, 1208 (3d Cir. 1996); *Reed v. Gardner*, 986 F.2d 1122, 1125 (7th Cir. 1993); *Freeman v. Ferguson*, 911 F.2d 52, 54-55 (8th Cir. 1990); *Wood v. Ostrander*, 879 F.2d 583, 589-90 (9th Cir. 1989); *Butera v. Dist. of Columbia*, 235 F.3d 637, 651 (D.C. Cir. 2001); *but see Velez-Diaz v. Vega-Irizarry*, 421 F.3d 71, 80 & n.3 (1st Cir. 2005) (noting that the First Circuit has discussed the state created danger theory but never found it actionable on the facts alleged) (quotations omitted); *Pinder v. Johnson*, 54 F.3d 1169, 1175 (4th Cir. 1995) (finding that the state created

circuit, the availability of the state created danger theory as the basis of liability for a § 1983 claim is far less certain. In *Leffall v. Dallas Independent School District*, 28 F.3d 521, 530-32 (5th Cir. 1994), this court discussed the state created danger theory and set forth the elements necessary to establish the claim as a basis for liability, but ultimately held that even if the state-created danger theory was constitutionally sound, the plaintiff failed to meet the necessary elements. Subsequent § 1983 cases predicated on the state created danger theory similarly pretermit the issue.[5]

On two occasions this court explicitly adopted the state created danger theory but was ultimately reversed. *See McClendon*, 258 F.3d at 436 (noting that the Fifth Circuit had "continued to recognize the existence of the theory" and thus applying the theory), *rev'd en banc*, 305 F.3d at 325 (holding that "neither this court nor the Supreme Court has yet determined whether a citizen has a

danger theory did not apply absent a custodial relationship).

[5] *See, e.g., Bustos v. Martini Club, Inc.*, 599 F.3d 458, 466 (5th Cir. 2010) ("[T]his circuit has not adopted the state-created danger theory."); *Luevano v. Geyer*, 355 F. App'x 834, 836 (5th Cir. 2009) ("We have repeatedly declined to rule on whether the state-created danger theory applies in this Circuit, but have found that even if it did apply, it would not allow recovery for the plaintiff under the facts of the case at hand."); *Hale v. Bexar Cnty., Tex.*, 342 F. App'x 921, 925-27 (5th Cir. 2009) (declining to apply the state created danger theory because this court had never expressly done so and even if available the plaintiff had not met the elements of the claim)*; Lester v. City of College Station*, 103 F. App'x. 814, 814-816 (5th Cir. 2004) ("[T]his court has neither adopted nor accepted the state-created-danger theory of liability."); *Greene v. Plano Indep. Sch. Dist.*, 103 F. App'x 542, 543-544, & n.3 (5th Cir. 2004) ("This Court . . . has never held that the state created danger theory is one of the limited circumstances that would rise to the level of a due process constitutional violation contemplated in *DeShaney*."); *Rivera v. Houston Indep. Sch. Dist.*, 349 F.3d 244, 249 (5th Cir. 2003) ("We have never recognized state-created danger as a trigger of State affirmative duties under the Due Process clause . . . .We again decline to do so."); *Piotrowski v. City of Houston*, 237 F.3d 567, 584-85 (5th Cir. 2001) (recognizing that the state created danger theory had not been explicitly adopted by this court and declining to do so in that matter because plaintiff had not met the elements of the theory); *Randolph v. Cervantes*, 130 F.3d 727, 731 (5th Cir. 1997) (same); *Doe v. Hillsboro Indep. Sch. Dist.*, 113 F.3d 1412, 1415  (5th Cir. 1997) (en banc) (same); *see also Walton v. Alexander*, 44 F.3d 1297, 1306 (5th Cir. 1995) (holding that absent a special relationship between the state actor and the individual, the "state has *no duty* to protect nor liability from failing to protect a person under the due process clause of the Fourteenth Amendment from violence at the hands of a private actor") (emphasis added).

constitutional right to be free from state-created dangers" and because the plaintiff failed to establish the necessary elements of the theory it would not apply even if available); *Breen v. Tex. A&M Univ.*, 485 F.3d 325, 337 (5th Cir. 2007) (holding that the state created danger theory was "a valid basis for a claim on the set of  facts alleged"), *rev'd*, 494 F.3d 516 (5th Cir. 2007) (granting rehearing *sua sponte* and issuing a subsequent opinion omitting discussion of state created danger theory); *see also Rivera v. Houston Indep. Sch. Dist.*, 349 F.3d 244, 249  n.5 (5th Cir. 2003) (recognizing that the panel's decision in *McClendon* "was vacated and with it our recognition of the [state created danger] theory"). Thus, this court's stance on the state created danger theory as a basis of liability for a § 1983 claim is uncertain.

Further, we have found that the state created danger theory was not clearly established for conduct that occurred in 1993.  *See McClendon*, 305 F.3d at 332-33. More recently this court has held that the state created danger theory is "not clearly established law within this circuit such that a § 1983 claim based on this theory could be sustained" for an incident that occurred in 2006. *See Walker v. Livingston*, No. 09-20508, 2010 WL 2465035, *2 (5th Cir. June 17, 2010) (unpublished) (citing *Morin v. Moore*, 309 F.3d 316, 321 (5th Cir. 2002)).

Although this court may consider the law of other circuits when determining whether a constitutional right is clearly established, "[t]he reluctance of this court . . . to embrace some version of the state-created danger theory despite numerous opportunities to do so suggests that, regardless of the status of this doctrine in other circuits, a reasonable officer in this circuit would, even [in 2002], be unclear as to whether there is a right to be free from 'state-created danger.'"  *McClendon*, 305 F.3d at 332 n.12. "[T]his circuit is littered with opinions expressing varying levels of skepticism." *Id*. This circuit's holdings on the viability of the state created danger theory following *McClendon* do not make its position any clearer.  *See, e.g., Rios v. City of Del Rio, Tex.*, 444

F.3d 417, 422-23 (5th Cir. 2006) ("[N]either the Supreme Court nor this court has ever either adopted the state-created danger theory or sustained a recovery on the basis thereof. We have, however, many times refused to allow recovery sought to be predicated thereunder."); *Longoria v. Texas*, 473 F.3d 586, 593 n.8 (5th Cir. 2006) ("Since [2003], we have explicitly rejected [the state created danger] theory of liability."); *Hernandez ex rel. Hernandez v. Tex. Dep't. of Protective and Regulatory Servs.*, 380 F.3d 872, 880 n.1 (5th Cir. 2004) ("We emphasize that our court has not yet determined whether a state official has a . . . duty to protect individuals from state-created dangers.") (quotation and citation omitted)*; Beltran v. City of El Paso*, 367 F.3d 299, 307 (5th Cir. 2004) ("This court has consistently refused to recognize a 'state-created danger' theory of § 1983 liability even where the question of the theory's viability has been squarely presented.").

"[Q]ualified immunity should be granted 'if a reasonable official would be left uncertain of the law's application to the facts confronting him.'" *McClendon*, 305 F.3d at 332 (quoting *Salas v. Carpenter*, 980 F.2d 299, 311 (5th Cir. 1992) (citation omitted). The state created danger theory has not been applied in this circuit with "obvious clarity" to the specific conduct in question such that a reasonable officer would be aware that his actions were unlawful. *See id.* Because the state created danger theory as a basis of liability was not clearly established at the time the incident occurred, the individual defendants are entitled to qualified immunity.[6]

---

[6] Appellants asserted in their complaints and appellate briefs, and conceded at oral argument, that their claim was brought pursuant to *DeShaney v. Winnebago Cnty. Dep't of Soc. Servs.*, 489 U.S. 189 (1989). Appellants now allege a second basis for liability under the "special relationship" theory. Because Appellants raise the "special relationship" theory of liability for the first time on appeal, this court will not consider them. *See Stewart Glass & Mirror, Inc. v. U.S. Auto Glass Disc. Ctrs., Inc.*, 200 F.3d 307, 316-17 (5th Cir. 2000) (holding that this court does not consider claims not raised before the district court).

**B.**

Appellants also appeal the magistrate judge's grant of summary judgment to the City on the basis of qualified immunity. A municipality is a "person" subject to suit under § 1983. *See Monell v. Dep't of Soc. Servs. of the City of New York*, 436 U.S. 658, 690 (1978). "[M]unicipal liability under section 1983 requires proof of three elements: a policymaker; an official policy; and a violation of constitutional rights whose 'moving force' is the policy or custom." *Piotrowski v. City of Houston*, 237 F.3d 567, 578 (5th Cir. 2001) (citation omitted). "Municipal liability requires deliberate action attributable to the municipality that is the direct cause of the alleged constitutional violation." *Zarnow v. City of Wichita Falls, Tex.*, — F.3d —, 2010 WL 3093443, *3 (5th Cir. August 9, 2010) (citing *City of Canton, Ohio v. Harris*, 489 U.S. 378, 391-92 (1989)).

Appellants assert that the City "ratified and approved" the actions of the individual defendants by way of its determination, following a review of the incident, that the police officers did not "breach[]" any City police department rules. The magistrate judge held that Appellants' response to the City's motion for summary judgment on this point was "vague," and because Appellants failed to establish a causal link between the department's alleged policy and the constitutional violation, the City was entitled to qualified immunity.

"If the authorized policymakers approve a subordinate's decision and the basis for it, their ratification would be chargeable to the municipality because their decision is final." *City of St. Louis v. Praprotnik*, 485 U.S. 112, 127 (1988). Moreover, "a policymaker who defends conduct that is later shown to be unlawful does not necessarily incur liability on behalf of the municipality." *Peterson v. City of Fort Worth, Tex.*, 588 F.3d 838, 848 (5th Cir. 2009) (citing *Coon v. Ledbetter*, 780 F.2d 1158, 1161-62 (5th Cir. 1986)). Appellants have not established a genuine issue of material fact as to whether the City's review of the officers' conduct violated department rules rises to the level of ratification such

No. 09-41072

that the City is liable for the officers' conduct. Thus, the City is entitled to qualified immunity.[7]

## III.

Finally, Appellants assert that the magistrate judge erred in dismissing their Texas state law claims against the City. This court reviews de novo a Rule 12(b)(6) dismissal. *See Lindquist v. City of Pasadena, Tex.*, 525 F.3d 383, 386 (5th Cir. 2008). The interpretation of a statute is a question of law we also review de novo. *See Motient Corp. v. Dondero*, 529 F.3d 532, 535 (5th Cir. 2008).

Under the doctrine of sovereign immunity, a unit of state government is immune from suit and liability unless the State has waived immunity. *Tooke v. City of Mexia*, 197 S.W.3d 325, 332 (Tex. 2006). The magistrate judge properly dismissed Appellants' claims for relief pursuant to Texas Civil Practice & Remedies Code § 71.002, as that statute does not waive governmental immunity. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 71.001-002 (West 2003) (permitting liability for "persons," defined as "an individual, association of individuals, joint-stock company, or corporation or a trustee or receiver of an individual, association of individuals, joint-stock company, or corporation.").[8]

---

[7] Appellants also raised municipal liability claims based on the City's alleged "shoot first ask questions later" policy and alleged failure to train its police officers and adopt department policies on the proper way to handle situations involving mentally ill persons. Because Appellants failed to raise its claim against the City's policy on appeal, we deem it forfeited. *See Davis v. Maggio*, 706 F.2d 568, 571 (5th Cir. 1983) ("Claims not pressed on appeal are deemed abandoned."). Appellants' allegations that the City failed to train and adopt appropriate policies were raised for the first time on appeal and are likewise forfeited. *See Stewart Glass & Mirror*, 200 F.3d at 316-17.

[8] Appellants also filed state law claims against the City pursuant to the Texas Tort Claims Act. Appellants make no argument on appeal as to the magistrate judge's dismissal of these claims. As such, they have been forfeited. *See Davis*, 706 F.2d at 571.

No. 09-41072

**IV.**

For the foregoing reasons, the magistrate judge's grant of summary judgment as to all Appellees and grant of the City's motion to dismiss is affirmed.

AFFIRMED.