Ezequiel **CASTRO RIVERA,**
et al., Plaintiffs,

v.

Fernando **FAGUNDO, et**
al., **Defendants.**

No. CIV. 03–1287(RLA).

United States District Court,
D. Puerto Rico.

March 18, 2004.

Ricardo Burgos–Vargas, Bufete E. Umpierre Suarez CSP, San Juan, PR, for Fernando Fagundo, Defendant.

Raul Castellanos–Malave, E. Umpierre Suarez, CSP, San Juan, PR, for Puerto Rico Highways and Transportation Authority, Defendant.

Glorianna S. Hita–Valiente, Llovet Zurinaga & Lopez, PSC, Hato Rey, PR, for Esteban Mujica, Defendant.

Carlos E. Lopez–Lopez, Llovet Zurinaga & Lopez, PSC, Hato Rey, PR, for Esteban Mujica, Defendant.

Juan Edgardo Perez–Fernandez, Bufete E. Umpierre Suarez CSP, San Juan, PR, for Fernando Fagundo, Defendant.

Francisco Rios–Rivera, Llovet Zurinaga & Lopez, PSC, Hato Rey, PR, for Esteban Mujica, Defendant.

Juan J. Vilella–Janeiro, Vilella–Janeiro Law Offices, San Juan, PR, for Barrett & Hale, Defendant.

## *ORDER DISMISSING THE COMPLAINT*

ACOSTA, District Judge.

The court is called upon at this time to examine the allegations in the complaint to determine whether or not jurisdiction has been properly asserted by plaintiffs.

### PROCEDURAL BACKGROUND

This action was instituted by the owners [1] of a property located along the route of a state government highway project originally denominated Highway PR–66 and now designated as the Eastern Corridor. Plaintiffs challenge the design of the drainage discharge system for the project on due process grounds pursuant to 42 U.S.C. § 1983.[2] Named defendants are:

---

1. The property was originally owned by EZEQUIEL CASTRO RIVERA and his wife, AURORA ADAMES. Although MR. CASTRO RIVERA appears as a the sole named party in the caption he passed away on May 4, 2002, prior to the filing of the complaint. The pleading clarifies that decedent is substituted by his widow and their two children, RAMON and IDA CASTRO appearing *pro se.*

2. Plaintiffs instituted a previous suit entitled *Ezequiel Castro Rivera v. Puerto Rico Highway and Transportation Authority,* Civ. No. 00–1970(RLA) alleging both constitutional and tortious claims against the PRHTA, various of its officials, as well as the contractor, plan

FERNANDO FAGUNDO, Director of the PUERTO RICO HIGHWAY AND TRANSPORTATION AUTHORITY ("PRHTA") in his personal capacity,[3] the PRHTA, ESTEBAN MUJICA, an officer of the local ENVIRONMENTAL QUALITY BOARD ("EQB") who signed the resolution approving PRTHA's Environmental Impact Statement ("EIS") also in his personal capacity, and BARRET & HALE, a private contracted project designer.

The highway, which is expected to run between the Municipalities of Canovanas and Carolina, seeks to alleviate the heavy traffic congestion generated by the tremendous growth of municipalities located to the West of the larger San Juan metropolitan area. The formal Environmental Impact Statement ("EIS") process commenced in 1992. However, plans for its construction were delayed due to controversies generated by environmental issues. On April 19, 2000, the Puerto Rico Supreme Court found the EIS process deficient and paralyzed construction. *See Colon Cortes v. Pesquera,* 2000 WL 424713 (P.R. April 19, 2000).

This suit attacks the adequacy of the process leading to the Environmental Impact Statement approved by the EQB subsequent to the Supreme Court's decision.

## ADMINISTRATIVE PROCEEDINGS

The following summarizes plaintiffs' allegations regarding the administrative process leading to the final approved EIS.

Plaintiff RAMON CASTRO participated in the EIS public hearings held by the EQB on January 17, 2002, and raised the drainage problems posed by the project.

On April 17, 2002, codefendant MUJICA issued a resolution pointing to 22 specific deficiencies in the EIS proposed by PRHTA including specifically the failure to provide information regarding the stormwater drainage.

On July 23, 2002, RAMON CASTRO wrote to MR. MUJICA alleging the proposed EIS was contrary to law in that it failed to comply with the local environmental legal provisions and sought to avoid known adverse environmental impacts.

On August 13, 2002, the PRHTA submitted an "updated" version of its EIS which did not address the drainage issues.

Plaintiff RAMON CASTRO again wrote to MR. MUJICA outlining the alleged deficiencies in the PRHTA's proposal.

A public hearing was held on October 3, 2002, on the "updated" version of the EIS at which time RAMON CASTRO again submitted specific deficiencies regarding drainage and flooding which he contended ran contrary to applicable environmental law and regulations.

On November 5, 2002, the EQB issued a resolution finding that PRHTA had "substantially satisfied" the agency's previous requirements but acknowledged that the PRHTA had failed to provide information on stormwater drainage for the project and instructed it to respond to the issues raised by MR. CASTRO.

---

designer and project manager of the highway. In those proceedings plaintiffs averred that the amounts offered as fair compensation in the pending eminent domain proceedings were inadequate. The court determined that it had no jurisdiction over these claims. *See* Order Dismissing Expropriation–Related Claims (docket No. 146). The § 1983 claims asserted against the private defendants were also dismissed for lack of the requisite "state action". *See* Order Dismissing Claims Asserted against Private Defendants (docket No. 149).

3. The respective spouses and conjugal partnerships of the individual defendants are also included as party defendants.

On January 7, 2003, the PRHTA submitted a final EIS version in which codefendant BARRET & HALE acknowledges that the drainage is deficient. According to plaintiffs they were not served with a copy of this document.

On February 18, 2003, MR. MUJICA issued EQB Resolution R–03–5–1 approving PRHTA's final EIS. The resolution determined that the submissions by PRHTA and BARRET & HALE were adequate and satisfied EQB's previous requirements.

Plaintiffs allege that the procedure followed by the EQB was flawed because they were not informed of the changes proposed by PRHTA in its EIS version of January 1, 2003. Plaintiffs characterize the fact that they were not notified of the "secret" proposal as "disturbing" and ascribe to it ill motives on defendants' part. In pertinent part, the pleading charges as follows:

> [T]he CHANGES to the Improper Drainage raise disturbing questions; not the least of which is the fact that they were submitted in secret. Thus the CHANGES were submitted secretly; the improper EIS–F was submitted secretly; and Mr. Esteban Mujica secretly approved the Improper EIS–F. The Castro family was never informed, never consulted, and never received an answer as purported in EQB–Resolutions–1, 2. Instead, on February 20, 2003 the Castro family received a copy of the EQB Resolution R–03–5–1 (hereinafter **EQB– Resolution–3**) signed by Mr. Esteban Mujica and issued on February 18, 2003. EQB–Resolution–3 simply declares that the submittals by PRHTA and Codefendant Barret & Hale are 'adequate'; further declares that PRHTA has 'satisfied' EQB's requirements thus approving PRHTA's Improper EIS–F.

Complaint ¶ 14 pp. 17–18 (caps and bold in original).

Additionally, plaintiffs argue the EIS is contrary to law because it does not adequately address the adverse effects of the water discharge as provided for in the pertinent statutes, regulations and manuals. According to plaintiffs, "PRHTA has yet to provide the information on stormwater drainage required in the EQB's own regulations. Moreover, plaintiffs' claim that PRHTA has yet to establish any justification for discharging stormwater from the proposed highway on to the Castro property." Complaint ¶ 15 p. 18.

## RULE 12  STANDARD

In disposing of motions to dismiss pursuant to Rule 12(b)(6) Fed.R.Civ.P. the court will accept all factual allegations as true and will make all reasonable inferences in plaintiff's favor. *Frazier v. Fairhaven School Com.*, 276 F.3d 52, 56 (1st Cir.2002); *Alternative Energy, Inc. v. St. Paul Fire and Marine Ins. Co.,* 267 F.3d 30, 33 (1st Cir.2001); *Berezin v. Regency Sav. Bank,* 234 F.3d 68, 70 (1st Cir.2000); *Tompkins v. United Healthcare of New England, Inc.,* 203 F.3d 90, 92 (1st Cir. 2000).

Our scope of review under this provision is a narrow one. Dismissal will only be granted if after having taken all well-pleaded allegations in the complaint as true, the Court finds that plaintiff is not entitled to relief under any theory. *Brown v. Hot, Sexy and Safer Prods., Inc.,* 68 F.3d 525, 530 (1st Cir.1995) *cert. den.* 516 U.S. 1159, 116 S.Ct. 1044, 134 L.Ed.2d 191 (1996); *Vartanian v. Monsanto Co.,* 14 F.3d 697, 700 (1st Cir.1994). Further, our role is to examine the complaint to determine whether plaintiff has adduced sufficient facts to state a cognizable cause of action. *Alternative Energy,* 267 F.3d at 36. The complaint will be dismissed if the

court finds that under the facts as pleaded plaintiff may not prevail on any possible theory. *Berezin,* 234 F.3d at 70; *Tompkins,* 203 F.3d at 93.

## SECTION 1983

Section 1983 does not create substantive rights but is rather a procedural mechanism for enforcing constitutional or statutory rights. *Albright v. Oliver,* 510 U.S. 266, 114 S.Ct. 807, 127 L.Ed.2d 114 (1994); *Cruz–Erazo v. Rivera–Montanez,* 212 F.3d 617, 621 (1st Cir.2000). The statute, i.e., § 1983 " 'is not itself a source of substantive rights, but a method for vindicating federal rights elsewhere conferred... by the United States Constitution and federal statutes.' " *Rodriguez–Garcia v. Municipality of Caguas,* 354 F.3d 91, 99 (1st Cir.2004) (citing *Baker v. McCollan,* 443 U.S. 137, 144 n. 3, 99 S.Ct. 2689, 61 L.Ed.2d 433 (1979)). Hence, it is plaintiffs' burden to identify the particular underlying constitutional or statutory right that is sought to be enforced via judicial proceedings.

■ In order to prevail in a § 1983 claim plaintiff must bring forth evidence that (1) defendant acted "under color of state law" and (2) deprivation of a federally protected right. *Rogan v. City of Boston,* 267 F.3d 24 (1st Cir.2001); *DiMarco–Zappa v. Cabanillas,* 238 F.3d 25, 33 (1st Cir.2001); *Collins v. Nuzzo,* 244 F.3d 246 (1st Cir.2001); *Cruz–Erazo,* 212 F.3d at 617; *Barreto–Rivera,* 168 F.3d at 45.

It is beyond peradventure that both FAGUNDO and MUJICA were acting within the scope of their duties as state officials during the process leading to this suit. Under particular circumstances, private actors linked to government action may also be deemed to have acted under color of law for purposes of § 1983. In the process of ascertaining whether "acts by a nominally private entity may comprise

state action... [the courts have examined whether] with respect to the activity at issue, the private entity is engaged in a traditionally exclusive public function; is 'entwined' with the government; is subject to government coercion or encouragement; or is willingly engaged in joint action with the government." *Logiodice v. Trustees of Maine Central Inst.,* 296 F.3d 22, 26 (1st Cir.2002). *Brentwood Acad. v. Tenn. Secondary Sch. Athletic Ass'n,* 531 U.S. 288, 295–96, 121 S.Ct. 924, 148 L.Ed.2d 807 (2001). *See also Perkins v. Londonderry Basketball Club,* 196 F.3d 13, 18 (1st Cir. 1999) (phrasing doctrine under "traditional public function", "elaborate financial or regulatory nexus" and "symbiotic relationship".)

Rather than engage in this "fact-sensitive" endeavor, *Perkins,* 196 F.3d at 18, we shall assume, for purposes of this Order that BARRET & HALE's conduct can be attributed to the state for § 1983 purposes.

Our next step is to ascertain whether plaintiffs were deprived of any federally protected right as a result of the events alleged in the complaint.

## DUE PROCESS

Plaintiffs claim both procedural and substantive due process violations as a result of the EIS finally approved by the EQB for the aforementioned project. Specifically, plaintiffs contend that the defendants acted contrary to applicable environmental and construction statutes, regulations and manuals in not properly addressing the stormwater discharge issue.

### Property Right

In order to establish a due process violation plaintiffs must first establish deprivation of a property right. According to the complaint, plaintiffs' property is affected by water runoff from the highway project

which presents a potential for flooding. They also point to a previous flooding incident. Assuming this situation is sufficient to raise due process concerns, we shall proceed to ascertain whether the aforementioned constitutional guarantee was breached.

### Procedural Due Process

The Due Process Clause provides that no state shall "deprive any person of life, liberty or property without due process of law." U.S. Const. amend. XIV, § 1.

■ In order to properly assert a procedural due process claim under § 1983, plaintiffs must show that: [1] they had a property interest and [2] that defendants, acting under color of state law, deprived them of that property interest without providing them a constitutionally adequate procedure. *Licari v. Ferruzzi,* 22 F.3d 344, 347 (1st Cir.1994); *Rumford Pharmacy v. City of East Providence,* 970 F.2d 996, 999 (1st Cir.1992); *PFZ Properties v. Rodriguez,* 928 F.2d 28, 30 (1st Cir.1991).

■ It is not sufficient that a deprivation has occurred. Plaintiffs carry the burden of pointing to the lack of constitutionally sound proceedings at the state level. *Rumford,* 970 F.2d at 999. Plaintiffs must present evidence that the state does not have available review mechanisms comporting with minimum due process requirements. *Zinermon v. Burch,* 494 U.S. 113, 126, 110 S.Ct. 975, 108 L.Ed.2d 100 (1990). Otherwise, "[i]f the federal courts were to entertain civil rights complaints based on procedural deprivations for which adequate state remedies exist, 'every disgruntled applicant could move [its procedural grievances] into the federal courts ... [,] any meaningful separation between federal and state jurisdiction would cease

to hold and forum shopping would become the order of the day.' " *Rumford,* 970 F.2d at 999 (citing *Roy v. City of Augusta, Me.,* 712 F.2d 1517, 1523 (1st Cir.1983)).

■ In order to ascertain the adequacy of the procedures available to plaintiffs " 'it is necessary to ask what process the State provided, and whether it was constitutionally adequate. This inquiry would examine the procedural safeguards built into the statutory or administrative procedure ... effecting the deprivations, and any remedies for erroneous deprivations provided by statute or tort law.' " *Licari,* 22 F.3d at 347 (citing *Zinermon v. Burch,* 494 U.S. at 126, 110 S.Ct. 975).

■ The issue before this court centers on an attack to the final EIS approved by EQB. Plaintiff has not specifically pointed to the reasons why the administrative proceedings proved inadequate.[4] The events as described by plaintiff resulting in EQB's eventual approval on February 18, 2003, clearly comport with minimum constitutional safeguards. Plaintiffs actively participated in the various stages of the EQB's decision-making process and were allowed ample opportunity to challenge PRHTA's position. Further, there is no indication that judicial review of an improper EIS is not available. *See Colon–Cortes v. Pesquera,* 2000 WL 424713 (whereby the Puerto Rico Supreme Court found the previous EIS deficient and paralyzed construction).

Just because plaintiffs disagree with the legal soundness of the final result does not mean that the process was not a fair one for procedural due process purposes

Plaintiffs have failed to meet their burden to establish that the procedure

---

4. The fact that they were not served copy of PRHTA's final submission does not render the entire process infirm.

available for review of PRHTA's EIS is inadequate. Rather, the arguments as presented challenge instead the legal adequacy of presiding officer's determination due to his purported failure to comply with the applicable statutory provisions.

Accordingly, we find that no legal grounds exist to support plaintiffs' procedural due process claim inasmuch as they had available a constitutionally adequate administrative process with potential for judicial review. Thus, the procedural due process claim is therefore **DISMISSED**.

### Substantive Due Process

■ Even though the due process clause refers only to procedural safeguards, it is settled that it also "contains a substantive component that bars certain arbitrary, wrongful government actions 'regardless of the fairness of the procedures used to implement them.'" *Zinermon*, 494 U.S. at 125, 110 S.Ct. 975 (citing *Daniels v. Williams*, 474 U.S. 327, 331, 106 S.Ct. 662, 88 L.Ed.2d 662 (1986)).

■ Procedural due process requires that a proceeding which results in a deprivation of property be a fair one whereas substantive due process guards against arbitrary and capricious government actions. *Licari*, 22 F.3d at 347.

■ The courts have consistently held that substantive due process claims are limited to extreme cases and "the threshold for establishing the requisite 'abuse of government power' is a high one indeed." *Licari* 22 F.3d at 350 (citing *Nestor Colon–Medina & Sucrs., Inc. v. Custodio*, 964 F.2d 32, 45 (1st Cir.1992)). "A viable substantive due process claim requires proof that the state action was in and of itself egregiously unacceptable, outrageous, or conscience-shocking". *Licari*, 22 F.3d at 347 (internal quotation marks and citation omitted); *Cruz–Erazo*, 212 F.3d at 622.

*See also, Nestor Colon Medina*, 964 F.2d at 45 (substantive due process mechanism limited to "truly horrendous situations").

In describing which action "shocks the conscience" for substantive due process purposes, "[i]t has been said, for instance, that substantive due process protects individuals against state actions which are 'arbitrary and capricious,' or those that run counter to 'the concept of ordered liberty,' or those which, in context, appear 'shocking or violative of universal standards of decency.'" *Cruz–Erazo*, 212 F.3d at 622 (citing *Amsden v. Moran*, 904 F.2d 748, 753–54 (1st Cir.1990)).

■ Deprivations resulting from negligent acts or omissions on the part of state officers are not actionable under due process provisions. *Davidson v. Cannon*, 474 U.S. 344, 106 S.Ct. 668, 88 L.Ed.2d 677 (1986). Nor is substantive due process protection triggered by merely unsound or erroneous government decisions. Its use is limited to those specific instances involving egregious abuse of governmental power which the courts find shocking. *Collins v. City of Harker Heights*, 503 U.S. 115, 112 S.Ct. 1061, 117 L.Ed.2d 261 (1992).

■ Additionally, "violations of state law—even where arbitrary, capricious, or undertaken in bad faith—do not, without more, give rise to a denial of substantive due process". *Coyne v. City of Somerville*, 972 F.2d 440, 444 (1st Cir. 1992). "The doctrine of substantive due process does not protect individuals from all governmental actions that infringe liberty or injure property in violation of some law. Rather, substantive due process prevents governmental power from being used for purposes of oppression, or abuse of government power that shocks the conscience, or action that is legally irrational in that it is not sufficiently keyed to any legitimate state interests." *PFZ Proper-*

*ties,* 928 F.2d at 31–2 (citations and internal brackets and quotation marks omitted).

■ The very nature of this constitutional protection has caused that substantiative due process protection be used sparingly. "Courts should guard against unduly expanding the concept of substantive due process 'because guideposts for responsible decisionmaking in this unchartered area are scarce and open ended.'" *South County Sand & Gravel Co., Inc. v. Town of South Kingstown,* 160 F.3d 834, 835 (1st Cir.1998) (citing *Collins v. City of Harker Heights,* 503 U.S. at 125, 112 S.Ct. 1061). Substantive due process, as a theory for constitutional redress, has in the past fifty years been disfavored, in part because of its virtually standardless reach." *Nestor Colon Medina,* 964 F.2d at 45; *Licari,* 22 F.3d at 350.

■ Further, in situations where plaintiffs are protected from undue interference from state actions by specific constitutional guarantees "they must assert their claims under that particular constitutional rubric instead of invoking the more generalized notion of substantive due process." *South County Sand & Gravel,* 160 F.3d at 835.

■ Regardless of how plaintiffs phrase their claims,[5] after a careful reading of the complaint their allegations can be summarized as their disagreement with the EQB's interpretation of the law regarding the drainage issue. However, the events as related in the pleadings do not meet the extreme circumstances warrant-

ed for a substantive due process action to prevail under § 1983. Even assuming, arguendo, that plaintiffs' interpretation of the law is correct and that the EQB erroneously approved the EIS this is insufficient for a viable substantive due process claim. The conduct by the defendants and the proceedings leading to the final EIS approval as related by plaintiffs do not rise to the level of an "egregious abuse of governmental power" which is shocking to the court as demanded by judicial precedent.

Accordingly, the substantive due process claims are likewise **DISMISSED**.

## CONCLUSION

Based on the foregoing, the court finds that plaintiffs have failed to assert a procedural or substantial due process claim under § 1983 and hence, the complaint is hereby DISMISSED.[6]

Judgment shall be entered accordingly.

IT IS SO ORDERED.

---

5. We do not take a position as to whether the adverse effects of the government's action on plaintiffs' property may constitute a Fifth Amendment "taking". See *Ortega Cabrera v. Municipality of Bayamon,* 562 F.2d 91 (1st Cir.1977).

6. Because the court finds that plaintiffs have failed to meet their burden under § 1983 there is no need to address the specific alter-

nate issues raised by defendants in their respective motions to dismiss. *See* PRHTA's Motion for Dismissal (docket No. **7**) and Memorandum (docket No. **8**); BARRET & HALE's Motion to Dismiss (docket No. **16**); BARRET & HALE's joinder (docket No. **21**); MUJICA's Motion to Dismiss (docket No. **29**). *See also,* Plaintiffs' Oppositions (docket Nos. **17, 23** and **30**).