**José NATAL–ROSARIO, et al., Plaintiffs**

v.

**PUERTO RICO POLICE DEPARTMENT, et al., Defendants.**

**Civil No. 08–1780 (JAG).**

United States District Court, D. Puerto Rico.

May 18, 2009.

---

Julio Cesar Alejandro–Serrano, Amauri D. Padilla–Garcia, Nicolas Nogueras–Cartagena, Nicolas Nogueras Law Offices, San Juan, PR, for Plaintiff.

Jose J. Gueits–Ortiz, Department of Justice of Puerto Rico, Isabel Munoz–Acosta, U.S. Attorney's Office, District of Puerto Rico, San Juan, PR, for Defendants.

## OPINION AND ORDER

GARCIA–GREGORY, District Judge.

Pending before the Court is Defendant Carlos Nazario's ("Nazario") motion to dismiss. (Docket No. 55). Additionally, Defendants Jane Erickson ("Erickson"), Miguel Marrero ("Marrero"), Iván López ("López"), and Mercedes Torres ("Torres") (collectively "Individual FBI Agents") moved to dismiss the claims against them. (Docket No. 57). For the reasons set forth below, the Court **GRANTS** in part and **DENIES** in part Nazario and Individual FBI Agents' (collectively "Defendants") motions to dismiss.

## FACTUAL AND PROCEDURAL BACKGROUND

On December 31, 2008, Plaintiff José E. Natal Rosario ("Natal"), Katherine M. Álvarez ("Álvarez") and the conjugal partnership composed by both of them (collectively "Plaintiffs") filed the present complaint against Defendants requesting money damages under the Civil Rights Act, 42 U.S.C. § 1983, the Fourth, Fifth, and Fourteenth Amendment of the Constitution of the United States. Plaintiffs also proffered claims under the Constitution of the Commonwealth of Puerto Rico, Puerto Rico Law No. 115 of December 20, 1991 ("Law 115"), P.R. Laws Ann. tit. 29, § 194a(a), and the Puerto Rico statutory law of negligence, P.R. Laws Ann. tit. 31, §§ 5141, 5142. Essentially, Plaintiffs allege that Natal was an agent of the Puerto Rico Police Department ("PRPD") who was deputized by the Federal Bureau of Investigations ("FBI") to work in the Domestic Counter Terrorism Unit at that agency (hereinafter referred to as "the Unit"). According to Plaintiffs, on or about November 2006, Marrero and

Torres, both of whom work for the FBI, targeted Natal for removal from the Unit. Plaintiffs aver that both of these federal officers implemented a systematic and continuous scheme to discredit Natal with his superiors and to tarnish his reputation within the Unit on the basis that Natal engaged in corrupt acts.

Plaintiffs allege that on April 11, 2008, co-defendant Nazario, a sergeant in the PRPD, and Marrero required that Natal appear in the offices of co-defendant Erickson, who is the Special Agent in Charge of the FBI. Once in Erickson's office, they allegedly informed Natal that it had come to the FBI's attention that he had sold information to a private citizen. According to Plaintiffs, Natal denied the charges and Erickson indicated to Natal that he should undergo a polygraph examination. Natal allegedly agreed to the exam.

Plaintiffs contend that co-defendant López, an FBI Agent, was supposed to administer the exam but instead questioned Natal about other matters that were not related to the alleged incident of selling information to a private citizen. According to Plaintiffs, López refused to conduct the polygraph examination and instead determined that Natal was lying. Plaintiffs claim that said determination was communicated to Erickson, who thereafter decided to remove Natal from the Unit. After Natal was removed from the Unit, he allegedly returned to the PRPD where he was informed by co-defendant José Caldero López ("Caldero"), who is a supervisor in the PRPD, that he would no longer be assigned to detective work because López had determined that he was corrupt. Plaintiffs aver that Natal was then transferred to Field Operations in the PRPD.

Plaintiffs claim that Natal's separation from the Unit and transfer from his detective work to the Fields Operation in the PRPD was done without due process of law in violation of his rights under the Fifth and Fourteenth Amendment. Additionally, Plaintiffs argue that Natal's substantive due process right under the Fourteenth and Fifth Amendment was violated. Furthermore, Plaintiffs allege that the act of intercepting Natal and interrogating him violated his rights under the Fourth Amendment. Plaintiffs also proffer several state law claims. (Docket No. 35).

On January 21, 2009, Caldero and co-defendant Ismael Morales ("Morales") moved to dismiss Plaintiffs' claims against them. Specifically, Caldero and Morales alleged that Plaintiffs' Fifth Amendment due process claims should be dismissed because neither of them were federal agents. Moreover, they claimed that Plaintiffs' Fourth Amendment claims against them should be dismissed because they were not involved in Natal's interrogation. Additionally, Caldero and Morales alleged that the complaint did not contain sufficient factual allegations to sustain Plaintiffs' Fourteenth Amendment claims against them. Alternatively, they averred that if this Court found that Plaintiffs adequately proffered claims under the Constitution of the United States, they were entitled to qualified immunity. Caldero and Morales also alleged that Álvarez' claims should be dismissed because she lacked standing to bring any claims under section 1983. Finally, Caldero and Morales requested that Plaintiffs' supplemental state law claims be dismissed. (Docket No. 41). On January 26, 2009, Plaintiffs opposed Caldero and Morales' motion to dismiss. (Docket No. 43).

On April 2, 2009, 609 F.Supp.2d 194 (D.P.R.2009), this Court issued an Opinion and Order granting in part and denying in part Caldero and Morales' motion to dismiss. Specifically, this Court dismissed Álvarez and the conjugal partnership's claims from the case at bar. Moreover,

Plaintiffs' Fourth and Fifth Amendment claims against Caldero were dismissed. Additionally, all claims against Morales were dismissed. (Docket No. 56).

Nazario now moves this Court to dismiss Plaintiffs' claims against him. In his motion to dismiss, Nazario argues that Plaintiffs' section 1983 claim against him should be dismissed because Plaintiffs failed to state a claim under the Fourth, Fifth, and Fourteenth Amendment. Nazario also argues that Álvarez' claims should be dismissed. Furthermore, Nazario requests that Plaintiffs' supplemental law claims against him be dismissed. (Docket No. 55). On April 23, 2009, Plaintiffs opposed Nazario's motion to dismiss. (Docket No. 61).

Individual FBI Agents also moved to dismiss the claims against them arguing that Plaintiffs only proffered negligence-based claims and, therefore, pursuant to 28 U.S.C. § 2679(d)(1) they should be substituted by the United States as the defendant.[1] The motion was accompanied by a certification that the Individual FBI Agents were acting within the scope of their employment at the time of the alleged incidents. The Government further argues that if the Individual FBI Agents are substituted, the claims against the United States should be dismissed because Plaintiffs failed to exhaust administrative remedies. Alternatively, the Individual FBI Agents argue that they are entitled to qualified immunity. (Docket No. 57). On April 23, 2009, Plaintiffs opposed the Individual FBI Agents' dismissal request. (Docket No. 67).

## STANDARD OF REVIEW

1. *Federal Rule of Civil Procedure 12(b)(6) Motion to Dismiss Standard*

In *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007), the Supreme Court recently held that to survive a motion to dismiss under Rule 12(b)(6), a complaint must allege "a plausible entitlement to relief." *Rodriguez–Ortiz v. Margo Caribe, Inc.*, 490 F.3d 92, 95–96 (1st Cir.2007) (citing *Twombly*, 127 S.Ct. at 1967). While *Twombly* does not require heightened fact pleading of specifics, it does require enough facts to "nudge [plaintiffs'] claims across the line from conceivable to plausible." *Twombly*, 127 S.Ct. at 1974. Accordingly, in order to avoid dismissal, the plaintiff must provide the grounds upon which his claim rests through factual allegations sufficient "to raise a right to relief above the speculative level." *Id.* at 1965.

The Court accepts all well-pleaded factual allegations as true, and draws all reasonable inferences in plaintiff's favor. *See Correa–Martinez v. Arrillaga–Belendez*, 903 F.2d 49, 51 (1st Cir.1990). The Court need not credit, however, "bald assertions, unsupportable conclusions, periphrastic circumlocutions, and the like" when evaluating the Complaint's allegations. *Aulson v. Blanchard*, 83 F.3d 1, 3 (1st Cir.1996). When opposing a Rule 12(b)(6) motion, "a

---

1. Pursuant to 28 U.S.C. § 2679(b), the United States is the proper defendant in any claim of "personal injury or death arising or resulting from the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment." 28 U.S.C. § 2679(b). Section 2679(d)(1) provides "upon certification by the Attorney General that the defendant employee was acting within the scope of his office or employment at the time of the incident out of which the claim arose,' the action 'shall be deemed an action against the United States ... and the United States shall be substituted as the party defendant.' " *Davric Me. Corp. v. United States Postal Serv.*, 238 F.3d 58, 65 (1st Cir.2001) (citing 28 U.S.C. § 2679(d)(1)).

plaintiff cannot expect a trial court to do his homework for him." *McCoy v. Massachusetts Institute of Tech.*, 950 F.2d 13, 22 (1st Cir.1991). Plaintiffs are responsible for putting their best foot forward in an effort to present a legal theory that will support their claim. *Id.* at 23 (citing *Correa–Martinez*, 903 F.2d at 52). Plaintiffs must set forth "factual allegations, either direct or inferential, regarding each material element necessary to sustain recovery under some actionable theory." *Gooley v. Mobil Oil Corp.*, 851 F.2d 513, 514 (1st Cir.1988).

## DISCUSSION

### 1. *Individual FBI Agents*

■ Plaintiffs' claims against the Individual FBI Agents are brought pursuant to section 1983, which creates a private cause of action against individuals who violate constitutional rights while acting under color of state law. *DiMarco–Zappa v. Cabanillas*, 238 F.3d 25, 33 (1st Cir.2001). However, the Individual FBI Agents were acting under color of federal law and, therefore, section 1983 is inapplicable. *See Wilson v. Layne*, 526 U.S. 603, 609, 119 S.Ct. 1692, 143 L.Ed.2d 818 (1999). Accordingly, Plaintiffs' section 1983 claims against the Individual FBI Agents shall be dismissed.

■ Plaintiffs' constitutional claims are actually brought pursuant to the *Bivens* doctrine. *Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics*, 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971). Much like the way that Section 1983 creates a private cause of action against individuals that violate constitutional rights while acting under color of state law, *Bivens* allows a private cause of action against federal officials who violate constitutional rights. "A claimant who seeks relief under *Bivens* must prove the violation of a constitutional right by a federal agent acting under color of federal law." *DeMayo v. Nugent*, 517 F.3d 11, 14 (1st Cir.2008). In determining whether Plaintiffs have proffered adequate claims under the Constitution of the United States, this Court is mindful that in civil rights cases, there is no heightened pleading standard. *Aponte–Torres v. Univ. of P.R.*, 445 F.3d 50, 55 (1st Cir.2006) (internal citations omitted). This Court must ask whether the complaint satisfies the basic notice pleading requirements of the Civil Rules. *Id.* "To meet those requirements, a complaint must contain 'a short and plain statement of the claim showing that the pleader[s are] entitled to relief,' Fed. R.Civ.P. 8(a)(2), and must 'give the defendants fair notice of what the plaintiff [s'] claim is and the grounds upon which it rests.'" *Id.* (internal citations omitted) (alterations in original).

Individual FBI Agents argue that the United States should be substituted as the defendant in all of Plaintiffs' claims. Namely, the Individual FBI Agents aver that Plaintiffs' constitutional claims are actually negligence based claims to which the Westfall Act substitution rule applies. We find, however, that only partial substitution is warranted.

"Section 5 of the Westfall Act, 28 U.S.C. § 2679(b), provides that the remedy against the United States under the Federal Tort Claims Act (FTCA) for 'personal injury or death arising or resulting from the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment is exclusive of any other civil action or proceeding for money damages by reason of the same subject matter' and shall 'preclude[ ]' any other damages action 'arising out of or relating to the same subject matter.'" *Velez–Diaz v. Vega–Irizarry*, 421 F.3d 71, 76 (1st Cir.2005) (citing

28 U.S.C. § 2679(b)(1)) (alteration in original). There are two exceptions to the exclusiveness of the remedy and preclusion of other damage suits. One of the exceptions is that the substitution rule "does not extend or apply to a civil action against an employee of the Government ... which is brought for a violation of the Constitution of the United States." 28 U.S.C. § 2679(b)(2).[2]

Basically, the United States must be substituted as the defendant in any case containing claims against any employee of the Government that results from a negligent or wrongful act or omission of the employee while acting within the scope of his office or employment. *See* 28 U.S.C. § 2679(b). Substitution takes place "upon certification by the Attorney General that the defendant employee was acting within the scope of his office or employment at the time of the incident. out of which the claim arose." *Davric Me. Corp. v. United States Postal Serv.*, 238 F.3d 58, 65 (1st Cir.2001) (citing 28 U.S.C. § 2679(d)(1)). It is settled that upon "certification," this Court must dismiss the federal employees from the case, and substitute the United States as defendant. *Velez–Diaz v. Vega–Irizarry*, 421 F.3d 71, 76 (1st Cir.2005). However, it is important to note that the "certification" does not conclusively establish the United States as the defendant because it is subject to judicial review such that the individual agents might be later reinstated as defendants. *Davric*, 238 F.3d at 65. Nonetheless, the fact that a "certification" is provisional has no bearing on the fact that "upon certification" the district court must initially substitute the

United States as defendant. *Velez–Diaz*, 421 F.3d at 76.

■, In the present case, the Individual FBI Agents' request for substitution was accompanied by a certification from the United States Attorney for the District of Puerto Rico that they were acting within the scope of their employment at the time of the alleged incidents. The Attorney General has delegated his certification authority under 28 U.S.C. § 2679(d)(1) to the United States Attorneys. 28 C.F.R. § 15.3(a). Thus, the Individual FBI Agents must be substituted by the United States in any negligence based claim against them.

In their complaint, Plaintiffs included state and federal constitutional damage claims in addition to their Puerto Rico statutory negligence and Law 115 claims.[3] As discussed above, a Westfall Act substitution is not appropriate when the plaintiff proffers constitutional damage claims. Nonetheless, a Westfall Act substitution of the United States as the defendant for a Puerto Rico statutory negligence claim is appropriate even when both state law and federal constitutional damage claims are asserted against federal employees. *Velez–Diaz*, 421 F.3d at 76. Hence, the United States is the proper defendant in Plaintiffs' Puerto Rico statutory negligence claim. This Court recognizes that Individual FBI Agents did argue that Plaintiffs' constitutional damage claims are really tort claims, that are subject to a Westfall Act substitution. However, as will be further discussed below, this Court finds that Plaintiffs proffered adequate constitutional

---

2. The substitution rule also "does not extend or apply to a civil action against an employee of the Government ... which is brought for a violation of a statute of the United States under which such action against an individual is otherwise authorized." 28 U.S.C. § 2679(b)(2).

3. Since Law 115 is an anti-retaliation statute, the Westfall Act substitution Act is inapplicable to any claim under said law.

claims against some of the Individual FBI Agents. In sum, we find that in the present case, the United States must substitute the Individual FBI Agents as the party defendant only in Plaintiffs' Puerto Rico statutory negligence law claim under P.R. Laws Ann. tit. 31, §§ 5141, 5142.

■ The Individual FBI Agents further argued that once conversion takes place, as is the case here, the claims against the United States should be dismissed because Plaintiffs have failed to exhaust administrative remedies. This Court agrees. "Under the FTCA, a court suit filed before exhaustion does not ripen but is barred." *Velez–Diaz v. United States,* 507 F.3d 717, 718 (1st Cir.2007) (citing *McNeil v. United States,* 508 U.S. 106, 112–13, 113 S.Ct. 1980, 124 L.Ed.2d 21 (1993)). The Government has attested to the fact that Plaintiffs have not exhausted administrative remedies as to any claim against the United States. Plaintiffs did not respond to this assertion nor have they shown to this Court that they did in fact timely exhaust administrative remedies. As a result, Plaintiffs' claim against the United States must be dismissed without prejudice for failing to exhaust administrative remedies.[4] This Court recognizes that at the time the present complaint was filed, it was against the Individual FBI Agents and no exhaustion requirement applied. Nonetheless, the certification turned the present case into one against the United States. Accordingly, Plaintiffs' claim pursuant to P.R. Laws Ann. tit. 31, §§ 5141, 5142 (Articles 1802 and 1803 of the Puerto Rico Civil Code) against the United States shall be dismissed. Now, we shall proceed to discuss why Plaintiffs have proffered adequate constitutional violation claims

against some of the Individual FBI Agents.

### a. *Fourth Amendment*

■ Plaintiffs submitted as a basis for their Fourth Amendment claim the following events which we refer to as Natal's interrogation/interview:

> Nazario and Marrero required that Mr. Natal appear before co-defendant Erickson. Once in Erickson's office, they verbally informed him that it had come to the agency's attention that Mr. Natal had sold information to this private citizen. Mr. Natal denied the charges. Codefendant Erickson then indicated to Mr. Natal that he should undergo a polygraph exam in order to assess the verity of his denial. Mr. Natal agreed to the exam ... Co-defendant López was supposed to administer the exam. However, instead of taking the exam he had [Natal] enter his office and conducted a wide examination of [Natal] on other matters, which were not related to the actual incident in which he was supposedly selling information to private individuals. [Natal] requested that the examination be commenced and after having recorded the [Natal's] statements, as was customary by López; co-defendant López refused to administer the polygraph exam and instead determined that the plaintiff was lying. (Docket No. 35, ¶¶ 18 and 20).

Plaintiffs argue that Natal's Fourth Amendment rights were violated when he was interrogated and interviewed against his will. The Fourth Amendment protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and sei-

---

4. Plaintiffs should note that "[t]he FTCA provides that when such a conversion occurs and the case is dismissed for failure to exhaust, a plaintiff is given a fresh period of 60 days within which to file an administrative complaint even if the initial period for doing so has lapsed." *Velez–Diaz,* 507 F.3d at 719, n. 1 (citing 28 U.S.C. § 2679(d)(5)).

zures." U.S. Const. amend. IV. "The primary purpose of the Fourth Amendment is 'to prevent arbitrary and oppressive interference by enforcement officials with the privacy and personal security of individuals.'" *United States v. Ford,* 548 F.3d 1, 4 (1st Cir.2008) (internal citations omitted). "[A] person has been 'seized' within the meaning of the Fourth Amendment only if, in view of all of the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave." *United States v. Mendenhall,* 446 U.S. 544, 554, 100 S.Ct. 1870, 64 L.Ed.2d 497 (1980). The *Mendenhall* Court further explained that a reasonable person might not believe he was free to leave when faced with "the threatening presence of several officers, the display of a weapon by an officer, some physical touching of the person of the citizen, or the use of language or tone of voice indicating that compliance with the officer's request might be compelled." *Id.*

This Court finds that in their complaint, Plaintiffs satisfactorily pled that Natal's interrogation/interview constituted a seizure because they specifically state that it took place against his will. Drawing all reasonable inference in Plaintiffs' favor, leads us to conclude that Plaintiffs' essentially claim that Natal was compelled to the interview in Erickson's office and once there he was not free to leave. However, the only federal agents that pursuant to the complaint were involved in Natal's interrogation/interview were López, Marrero, and Erickson. Accordingly, Plaintiffs' Fourth Amendment claims against López, Marrero, and Erickson will not be dismissed. However, the complaint is completely devoid of any pleading that notifies Torres of the grounds upon which Plaintiffs' Fourth Amendment claim against her rest. Therefore, Plaintiffs' Fourth Amendment claim against Torres shall be dismissed.

#### b. *Due Process Clause Claim*

Plaintiffs proffers due process claims under the Fifth Amendment against Individual FBI Agents. Plaintiffs' Due Process Clause claims are premised on Natal's removal from the Unit. First, Plaintiffs argue that Individual FBI Agents' acts and omission in separating Natal from the Unit violated his substantive due process right. Second, Plaintiffs allege that the removal from the Unit occurred without a constitutional valid process in violation of the Fifth Amendment.

■ The Due Process Clause of the Fifth Amendment states in pertinent part that: "No person shall ... be deprived of life, liberty, or property, without due process of law ..." U.S. Const. amend. V. The Due Process Clause "contains a substantive component that bars certain arbitrary, wrongful government actions." *Zinermon v. Burch,* 494 U.S. 113, 125, 110 S.Ct. 975, 108 L.Ed.2d 100 (1990). However, "[t]he doctrine of substantive due process does not protect individuals from all [governmental] actions that infringe liberty or injure property in violation of some law." *PFZ Properties, Inc. v. Rodriguez,* 928 F.2d 28, 31 (1st Cir.1991) (internal citation and quotation marks omitted) (alterations in original). Substantive due process protection is not triggered by merely unsound or erroneous government decisions. *Rivera v. Fagundo,* 310 F.Supp.2d 428, 435 (D.P.R.2004).

■ Substantive due process claims are limited to extreme cases and "the threshold for establishing the requisite 'abuse of government power' is a high one." *Licari v. Ferruzzi,* 22 F.3d 344, 350 (1st Cir.1994) (internal citations omitted). "A viable substantive due process claim requires proof that the state action was "in and of itself ... egregiously unacceptable,

outrageous, or conscious-shocking." " *Id.* at 347. Thus, a substantive due process claim is limited to those specific instances involving egregious abuse of governmental power which the court finds shocking. *Collins v. City of Harker Heights*, 503 U.S. 115, 128, 112 S.Ct. 1061, 117 L.Ed.2d 261 (1992). This Court has recognized that the very nature of this constitutional protection has caused that substantiative due process protection be used sparingly as it is disfavored, in part because of its virtually standardless reach. *Rivera*, 310 F.Supp.2d at 436 (internal citations and quotation marks omitted).

■ We find that regardless of how Plaintiffs phrase their claims, the events surrounding Natal's removal from the Unit do not meet the extreme circumstances warranted for their due process substantive action to prevail. The conduct by the Individual FBI Agents and the events leading to the Natal's removal as related by plaintiffs do not rise to the level of an "egregious abuse of governmental power" which is shocking to this Court as demanded by judicial precedent. *See, e.g., Tavarez–Guerrero v. Toledo–Davila*, 573 F.Supp.2d 507, 512 (D.P.R.2008) (holding that plaintiffs' allegation that they suffered a seventeen hour deprivation of food and water following an arrest was sufficient to avoid the dismissal of their substantive due process claims). Consequently, Plaintiffs' substantive due process claims against Individual FBI Agents shall be dismissed.

According to Plaintiffs, Natal's procedural due process right under the Fifth Amendment was also violated when he was removed from the Unit. Plaintiffs aver that Natal was never notified of the charges against him,[5] nor was he provided with an informal hearing in which he could have brought evidence against the charges.

Furthermore, Plaintiffs aver that Natal was never administered a polygraph test, which allegedly is the mechanism that the FBI must use to determine whether an officer is lying.

■ To establish a procedural due process claim, a plaintiff must first allege that he has a property interest as defined by state law and, second, that the defendants, acting under color of state law, deprived him of that property interest without a constitutionally adequate process. *Colon Rodriguez v. Lopez Bonilla*, 344 F.Supp.2d 333, 343 (D.P.R.2004). As noted in our previous opinion and order, Plaintiffs' procedural due process claims are premised on: 1) Natal's removal from the Unit and 2) his transfer from his duties as a detective to the Field Operations division in the PRPD. Only the allegations regarding Natal's removal from the Unit are relevant to determine whether Plaintiffs proffered adequate procedural due process claims against the Individual FBI Agents. To do so, this Court must first determine whether Natal had a property interest over his position with the Unit.

"[P]roperty interests are not created by the Constitution; 'they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law.' " *Id.* (citing *Bd. of Regents v. Roth*, 408 U.S. 564, 577, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972)). In order for Plaintiffs to show that Natal had a constitutionally protected interest in the position he previously held with the Unit, Plaintiffs must establish that Natal had a "legitimate expectation of continued employment [deriving] from a statute, a contract, or an officially sanctioned rule of the workplace." *Gilbert v. Homar*, 520 U.S. 924, 930, 117 S.Ct. 1807, 138 L.Ed.2d 120 (1997) (internal citations

---

**5.** As discussed above, Natal was charged with selling information to a private citizen.

omitted) (alteration in original). In the previous Opinion and Order, this Court concluded that Natal has a protected property interest in his career position with the PRPD. Natal's status as a career employee guarantees that he cannot be dismissed or demoted from the PRPD without good cause. *See Gonzalez Vega v. Hernandez Colon,* 682 F.Supp. 131, 134 (D.P.R.1988). However, Natal does not have a property interest over his position with the Unit.

■ An FBI Agent does not have a due process property interest over his employment because he is specifically exempted from the reach of the civil service laws and, therefore, has no statutory right to continued employment. *Navarro v. United States,* 104 F.Supp.2d 96, 99–100 (D.P.R.2000); *see also Mack v. United States,* 814 F.2d 120, 123 (2d Cir.1987). Essentially, an FBI Agent can be discharged with or without just cause. *Id.* Thus, if FBI Agents normally do not have a property interest over their employment, Natal cannot come before this Court and claim that as a PRPD officer[6] deputized by the FBI, he does have a property interest over his assigned position with the FBI. Since we find that Natal does not have a property interest over his position with the Unit, Plaintiffs' have failed to meet the first prong of a procedural due process claim. Accordingly, Plaintiffs' procedural due process claims against the Individual FBI Agents must be dismissed.

### 2. *Nazario*

■ Plaintiffs bring the present suit against Nazario under section 1983. It is well settled law that section 1983 "is not itself a source of substantive rights, but merely provides a method for vindicating federal rights elsewhere conferred." *Gra-*

*ham v. Connor,* 490 U.S. 386, 394, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989) (internal citations and quotation marks omitted). Under section 1983, a plaintiff must first show that "the conduct complained of was committed by a person acting under color of state law." *Destek Group, Inc. v. State of New Hampshire Public Utilities Commission,* 318 F.3d 32, 39 (1st Cir.2003). Secondly, a plaintiff must show the defendant's conduct deprived a person of rights, privileges, or immunities secured by the Constitution of the United States. *Gutierrez-Rodriguez v. Cartagena,* 882 F.2d 553, 559 (1st Cir.1989). "To satisfy the second element, plaintiffs must show that the defendants' conduct was the cause in fact of the alleged deprivation." *Rodriguez-Cirilo v. Garcia,* 115 F.3d 50, 52 (1st Cir.1997).

Nazario is a state official. As such, the first requirement of a section 1983 claim has been met. Thus, this Court must next address whether Plaintiffs have a valid constitutional claim under the Fourth, Fifth, and Fourteenth Amendment of the Constitution of the United States. We begin with the Fourth Amendment.

#### a. *Fourth Amendment*

As discussed above, this Court finds that in their complaint, Plaintiffs proffered an adequate Fourth Amendment claim because they satisfactorily pled that Natal's interrogation/interview constituted a seizure. The complaint specifies Nazario's involvement in the interview/interrogation. Namely, the complaint mentions that Nazario required Natal to appear before Erickson and that once Natal was in Erickson's office, Nazario together with Marrero initiated the interview/interrogation by indicating to Natal that "it had come to the [FBI]'s attention that Mr.

---

**6.** The complaint does not contain any allegations that Natal has been terminated from the PRPD.

Natal had sold information to [a] private citizen." (Docket No. 35, ¶ 18). Thus, Plaintiffs' Fourth Amendment claim against Nazario cannot be dismissed.

### b. *Fifth Amendment*

■ Nazario contends that Plaintiffs' Fifth Amendment claim against him should also be dismissed because he is an employee of the Commonwealth of Puerto Rico. This Court agrees. As mentioned in the previous Opinion and Order, the Fifth Amendment Due Process Clause applies only to actions of the federal government not those of state governments. *Public Utilities Commission v. Pollak,* 343 U.S. 451, 461, 72 S.Ct. 813, 96 L.Ed. 1068 (1952); *see also Martinez–Rivera v. Ramos,* 498 F.3d 3, 8 (1st Cir.2007). Since Nazario is not a federal agent, Plaintiffs' Fifth Amendment claim against him must be dismissed.

### c. *Fourteenth Amendment*

■ Nazario also moved to dismiss Plaintiffs' due process claim under the Fourteenth Amendment. Plaintiffs' Fourteenth Amendment claim is premised on Natal's transfer from his duties as a detective to the Field Operations division where he was no longer eligible for selection for federal deputy positions with the FBI and other federal agencies. In the previous Opinion and Order, this Court determined that Plaintiffs' pleadings were sufficient at the motion to dismiss stage to show that he was deprived of a protected property interest when he was transferred from his duties as a detective. Further, this Court held that for purposes of the motion to dismiss stage, Plaintiff was deprived of his property interest without a constitutionally adequate process. However, the complaint is completely devoid of any allegations as to Nazario's participation in Natal's transfer to the Field Operations division. Hence, Plaintiffs

have not proffered any allegations, which give notice to Nazario of the grounds upon which the Fourteenth Amendment claim against him rests. Accordingly, Plaintiffs' Fourteenth Amendment procedural due process claim against Nazario must be dismissed.

■ We note that Plaintiffs' complaint includes a substantive due process claim under the Fourteenth Amendment. This substantive due process claim is also premised on Natal's transfer to the Field Operations division of the PRPD. We find that these events are not sufficiently shocking for this Court to allow Plaintiffs' substantive due process claims to continue. As such, Plaintiffs' substantive due process claims under the Fourteenth Amendment shall be dismissed from the present case. This Court notes that the other defendants in the case at bar have not moved for the dismissal of Plaintiffs' substantive due process claims. Nonetheless, sua sponte dismissal is warranted because it is crystal clear that regardless of how Plaintiffs phrase their claims, they will not be able to meet the extreme circumstances standard needed to prevail. *See TMTV Corp. v. Pegasus Broad. of San Juan,* 490 F.Supp.2d 228, 236 (D.P.R.2007) (citing *Chute v. Walker,* 281 F.3d 314, 319 (1st Cir.2002)) (holding that "[s]ua sponte dismissal should be used sparingly, but is appropriate if it is 'crystal clear that the plaintiff cannot prevail and that amending the complaint would be futile' ").

### d. *Álvarez Claims*

Nazario also moved to dismiss Álvarez and the conjugal partnership's claims. Said claims have already been dismissed from the present case, therefore, we need not address them.

### 3. *Qualified Immunity*

■ Although this case involves suits under both section 1983 and *Bivens,*

the qualified immunity analysis is identical under either cause of action. *Wilson*, 526 U.S. at 609, 119 S.Ct. 1692. Qualified immunity protects public officials from the specter of damages liability for judgment calls made in a legally uncertain environment. *Santana v. Calderon*, 342 F.3d 18, 23 (1st Cir.2003) (citing *Ryder v. United States*, 515 U.S. 177, 185, 115 S.Ct. 2031, 132 L.Ed.2d 136 (1995)). The First Circuit employs a three-part test when determining if a public official is entitled to qualified immunity: "(1) whether plaintiff's allegations, if true, establish a constitutional violation; (2) whether that right was clearly established at the time of the alleged violation; and (3) whether a similarly situated reasonable official would have understood that the challenged action violated the constitutional right at issue." *Mihos v. Swift*, 358 F.3d 91, 102 (1st Cir.2004) (citing *Suboh v. District Attorney's Office of Suffolk Dist.*, 298 F.3d 81, 90 (1st Cir. 2002)); *Harlow v. Fitzgerald*, 457 U.S. 800, 818–19, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). To overcome a qualified immunity defense, a plaintiff must lead the Court to answer all three prongs of this test in the affirmative. *Mihos v. Swift*, 358 F.3d at 98–99. "In order to conclude that the right which the official allegedly violated is 'clearly established,' the contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton*, 483 U.S. 635, 640, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987). Moreover, in determining whether a similarly situated reasonable official would have understood that the challenged action violated the constitutional right at issue, "the relevant question is whether a reasonable official could have believed his actions were lawful in light of clearly established law and the information the official possessed at the time of his allegedly unlawful conduct." *Singer v. Maine*, 49 F.3d 837, 844 (1st Cir.1995) (internal citations omitted).

As discussed above, Plaintiffs have asserted viable constitutional violation claims against Defendants. This Court cannot conclude that the constitutional rights implicated are not "clearly established under then-existing law so that a reasonable officer would have known that his conduct was unlawful." *Rivera v. de la Familia*, No. 05–1109, 2006 WL 852066, at *7, 2006 U.S. Dist. LEXIS 19558, at *23 (D.P.R. Mar. 28, 2006). Without a more developed record this Court cannot find that the implicated constitutional rights are so clearly established that a reasonable officer would have known that his conduct was unlawful. Therefore, this Court will deny the motions to dismiss on qualified immunity grounds.

### 4. *Supplemental Law Claims*

 Defendants also argue that Plaintiffs' remaining state law claims should be dismissed. This Court should decline to exercise supplemental jurisdiction over a plaintiff's supplemental jurisdiction claims when all federal claims are dismissed. *See Camelio v. American Federation*, 137 F.3d 666, 672 (1st Cir.1998) (holding that "the balance of competing factors ordinarily will weigh strongly in favor of declining jurisdiction over state law claims where the foundational federal claims have been dismissed at an early stage in the litigation") (internal citations omitted). This Court will only dismiss all federal claims against Torres. Therefore, only Plaintiffs' supplemental law claims against Torres shall be dismissed.

### CONCLUSION

For the reasons stated above, the Court hereby **GRANTS** in part and **DENIES** in part the pending motions to dismiss. (Docket Nos. 55 and 57). Plaintiffs' sec-

188

tion 1983 claims against Individual FBI Agents are dismissed with prejudice. Furthermore, Plaintiffs' state law claims against the United States pursuant to P.R. Laws Ann. tit. 31, §§ 5141, 5142 are dismissed without prejudice. Plaintiffs' Fourth Amendment claim against Torres is dismissed with prejudice. Additionally, Plaintiffs' Fifth Amendment due process claims against the Individual FBI Agents are dismissed with prejudice. Plaintiffs' supplemental law claims against Torres shall be dismissed without prejudice. Since all of Plaintiffs' claims against Torres shall be dismissed, Partial Judgment shall be entered dismissing Torres from the case at bar. Moreover, Plaintiffs' Fourteenth Amendment substantive due process claims are dismissed with prejudice from the present case. Plaintiffs' Fourteenth Amendment procedural due process claim against Nazario shall be dismissed with prejudice. Finally, Plaintiffs' Fifth Amendment claim against Nazario shall be dismissed with prejudice.

IT IS SO ORDERED.